37 So.2d 97

**REGIONAL AGRICULTURAL CREDIT CORPORATION OF WASHINGTON, D. C., v. HENDLEY.**

**4 Div. 454.**

Supreme Court of Alabama.
Oct. 7, 1948.

Cope & Cope, of Union Springs, for appellant.

Lawrence K. Andrews, of Union Springs, for appellee.

264

STAKELY, Justice.

In 1943 the United States Department of Agriculture through the Regional Agricultural Credit Corporation of Washington, D. C., a corporation (appellant) undertook to stimulate the production of certain crops, including peanuts, in connection with the war effort. The plan was to provide financing through loans to farmers who had land and facilities for producing such crops. The actual processing of the loans was delegated to the respective County War Boards of the United States Department of Agriculture, in this case the County War Board of Bullock County.

Cephus H. Hendley (appellee) made application to appellant for such a loan with the result that on February 16, 1943, he obtained a loan of $1,700 for which he executed his promissory note bearing such date and payable November 30, 1943. This note is the basis of count 1 of the complaint. Subsequently he obtained an additional advance of $400 for the purpose of gathering crops for which he executed his promissory note dated August 23, 1943, and payable November 30, 1943. The second note is the basis of count 2 of the complaint.

The foregoing notes each contained, among other provisions, the following which are set out in each count:

"The maker shall be personally liable for the full amount of such advances subject to the condition that if the United States Department of Agriculture War Board of the County identified by the State and County code appearing in the identification number on this note (or such other agency or person as the Regional Agricultural Credit Corporation of Wash-ington, D. C., may designate to make the certification herein required) certifies that:

"1. The makers have used the amount advanced for producing the crops for the production of which advances were made;

"2. The makers have provided for insurance on such crops to the extent and in the manner required by the Regional Agricultural Credit Corporation of Washington, D. C., to protect its interest in such crops;

"3. The makers in good faith have diligently applied the principles of good husbandry to the production of such crops;

"4. The makers have applied to the repayment of the advances an amount equal to all proceeds of such crops, including the proceeds of any incentive or other similar payments made by the United States on such crops and the proceeds of any insurance on such crops; and,

"5. Such amount has been insufficient to repay in full, then the Regional Agricultural Credit Corporation of Washington, D. C., will not look to other assets of the makers for the repayment of that part of the advance which exceeds such proceeds but will cancel the maker's obligation for the balance of the advance."

On December 11, 1943, the appellee paid $908.82 on the indebtedness evidenced by the notes. This suit is brought to recover the balance claimed to be due. It is conceded that the Bullock County War Board did not certify to the facts or conditions contained in the notes. Trial of the case resulted in a verdict and judgment for the defendant. The appellant, among other assignments, assigns as error the rulings of the court on various special pleas. The demurrers to these pleas were overruled.

The defense is centered around an effort to avoid the clause providing for certificate by the War Board of certain facts and conditions. The pleas of the defendant set up three bases for such defense, which may be summarized as follows: (a) The provisions for the certificate were not the true contract between the parties but on the contrary at the time of the execution and delivery of the note it was agreed that if the appellee used the proceeds of the loan in the production of a peanut crop, em-

ployed good husbandry and applied the proceeds from such crop to the payment of the note and such proceeds were insufficient to pay the note, appellant would cancel the note. It is claimed that defendant complied with such agreement and accordingly there was no unpaid indebtedness. This defense is sought to be set up in pleas 3 and 4. (b) The defendant was induced to sign the note through false and fraudulent representations pertaining to the clause to which reference has been made. This defense is sought to be set up in pleas 5, 6, 7, 8 and 9. (c) The action of the War Board in denying the certificate was a mistake or failure to exercise an honest judgment and the defendant was entitled to such a certificate. This defense was sought to be set up in plea 10.

▮ It is obvious that plea 3, which will appear in the report of the case, sets up an agreement different from that contained in the note, because in the note nonliability on the note is predicated on certain facts and conditions certified to by the War Board. It is claimed, however, that plea 3 is good because the agreements therein alleged are a part of the consideration for the note and parol evidence is admissible to show the true consideration. See Wells v. Drane et al., 206 Ala. 583, 90 So. 898. We think, however, that this is a principle not here applicable. Parol evidence is not admissible where the effect would be to change or defeat the legal operation and effect of the instrument. Hardegree v. Riley, 219 Ala. 607, 122 So. 814; Kilgore v. Arant, 25 Ala.App. 356, 146 So. 540; First Nat. Bank of Guntersville v. Bain et al., 237 Ala. 580, 188 So. 64; Jackson v. Sample, 236 Ala. 486, 183 So. 646; Davenport & Harris Undertaking Co. v. Roberson, 219 Ala. 203, 121 So. 733; Scott v. McGill, 245 Ala. 256, 16 So.2d 866; 32 C. J.S., Evidence, § 951, p. 880; 8 Am.Jur. p. 642. Plea 4 is substantially similar to plea 3 except that plea 4 undertakes to state the defense set up in plea 3 upon the theory that such defense will prevail when the entire contract between the parties is considered. It seems to us, however, that the agreements set forth in the note appear to be complete on their face and certainly the agreement alleged in the plea con-

tradicts that set forth in the note. West & West v. Kelly's Ex'rs, 19 Ala. 353, 54 Am. Dec. 192; Scott v. McGill, supra. The demurrers to pleas 3 and 4, which were overruled, should have been sustained.

▮ While differing in some detail in their allegations, pleas 5 through 9, inclusive, are based on the principle that execution of the notes by the defendant to the plaintiff was procured by false and fraudulent representations to the defendant of the contents of the notes, which the defendant signed without reading in reliance on the statements as to their contents. In substance it is alleged that defendant was told that the notes provided that if the defendant used the proceeds of the loan advanced to him to produce a peanut crop and applied all the proceeds from the sale of such crop toward payment of the debt evidenced by the note, the plaintiff would cancel the note even though the proceeds from the sale of such crop was insufficient to pay the debt in full. Broadly speaking there is no doubt that the pleas set up a good defense and parol evidence is admissible to show the fraud. Standard Oil Co. v. Myers, 232 Ala. 662, 169 So. 312; Prestwood v. Carlton, 162 Ala. 327, 50 So. 254, 257. We quote from Prestwood v. Carlton, supra, as follows:

"One who has executed a written contract in ignorance of its contents cannot set up his ignorance to avoid the obligation in the absence of fraud or misrepresentations. If he cannot read, it is his duty to have the instrument read to him; but, if the execution of such contract by him was procured by misrepresentations on the part of the other party of its contents, such misrepresentations may be such a fraud as will furnish a defense in an action at law, based upon such contract, when brought by the party making the misrepresentations. Cannon v. Lindsey, 85 Ala. 198, 3 So. 676, 7 Am.St. Rep. 38; Bates v. Harte, 124 Ala. 427, 26 So. 898, 82 Am.St. Rep. 186. Judge Brickell has stated the proposition as follows in the case of Tillis & O'Neal v. Austin, 117 Ala. [262], 263, 22 So. 975, [976]: 'When the execution of an instrument which the party signing did not intend to sign and did not know he was

signing is procured by a misrepresentation of its contents, and the party signing it does so without reading or having it read, relying upon such misrepresentation and fraud and believing he is signing a different instrument, he can avoid the effect of his signature notwithstanding he was able to read, and had the opportunity to read the instrument.' * * *.'"

Most of these pleas contain the following allegation or an allegation substantially similar thereto: "That at said time the plaintiff, by its agent, which said agent was then and there acting in line and scope of his employment or authority, or in furtherance of plaintiff's business, represented to him * * *." Construing the pleadings against the pleader as we must do on demurrer, the foregoing allegation is in the disjunctive. In such a situation each allegation must be sufficient within itself. Osborne v. Alabama Steel & Wire Co., 135 Ala. 571, 33 So. 687; Martin v. Powell, 200 Ala. 46, 75 So. 358; Corpening v. Worthington, 99 Ala. 541, 12 So. 426; Louisville & N. R. Co., v. McCool, 167 Ala. 644, 52 So. 656. This principle is distinguishable from one where there is a demurrer to a complaint which contains several breaches of a contract. Western Union Telegraph Co. v. Barbour, 206 Ala. 129, 89 So. 299, 17 A.L.R. 103; Lambert v. Jefferson, Ala.Sup., 36 So.2d 594, headnote 13.[1] Accordingly it is insisted that the demurrer should have been sustained because the allegation "in furtherance of plaintiff's business" is not sufficient where it is not coupled with an allegation showing in substance that the agent was acting within the scope of his authority or course of his employment. We do not think that the demurrer as framed aptly raises the question here mentioned because it is not directed to this particular averment, but to the entire allegation, the first alternative of which is obviously good. So the court was not in error in overruling the demurrer. But since the case must be tried again, the proposition warrants discussion as a guide to further proceedings.

■ In the case of Southern Ry. Co. v. Wildman, Adm'r, 119 Ala. 565, 570, 24 So.

764, 766, this court said: "There is no doubt that the principal is liable for the acts of the agent done in the interest of and in the prosecution of the business of the principal, if acting within the scope of his employment." See also Standard Oil of Kentucky v. Gunn, 234 Ala. 598, 176 So. 332; Gulf Electric Co. v. Fried, 218 Ala. 684, 119 So. 685; Brotherhood of Railroad Trainmen v. Jennings, 232 Ala. 438, 168 So. 173; Hardeman v. Williams, 150 Ala. 415, 43 So. 726, 10 L.R.A.,N.S., 653; King v. Livingston Mfg. Co., 180 Ala. 118, 60 So. 143; 3 C.J.S., Agency, § 231, p. 138. In the case of Birmingham News Co. v. Browne, 228 Ala. 395, 153 So. 773, there appear to be expressions to the contrary, but this is apparently inadvertence because the quotation in the opinion from Wallace v. John A. Casey Co., 132 App.Div. 35, 116 N.Y.S. 394, 400, if correctly copied, would read as follows: "In the case of alleged willful or reckless acts, the test is whether the act was done within the general scope of the employment and with a view to the furtherance of the master's business, or whether the servant did it to effect some other purpose, without having the master's interest or service in mind. * * *."

The situation under discussion must not be confused by cases involving the Workmen's Compensation Act. Code 1940, Tit. 26, § 253 et seq. In those cases the court was giving a liberal construction to a statute in order to advance its beneficent objects. Houser v. Young, 247 Ala. 562, 25 So.2d 421; Ex parte Terry et al., 211 Ala. 418, 100 So. 768. The last cited case indicates that there is a difference between an agent acting within the line and scope of his employment and acting merely in furtherance of his employer's business.

■ It should be noted that we are dealing here with a plea based upon fraud. In such cases involving fraud or deceit in contractual dealings the question of apparent authority may become material. In ordinary actions based upon the negligence or trespass of an agent or servant, the case usually depends upon who was the real principal or master and appearances are ordinarily immaterial. Mechem on Agency,

---

[1] Ante, p. 5.

Vol. II, p. 1556. See also Standard Oil of Kentucky v. Gunn, supra; Gulf Electric Co. v. Fried, supra. However, as a matter of pleading we said in Christian Benevolent Burial Ass'n v. Thornton, 241 Ala. 13, 1 So.2d 8, 10, that "he was within the 'apparent' scope of his authority is not an apt method of alleging such authority." In other words an allegation of apparent authority is not required because proof of apparent authority may be made under an allegation that the agent was acting within the line and scope of his authority. 2 Am. Jur. pp. 346, 347.

■ In an action based on fraud there is the further proposition that the principal may be charged with the fraud by his ratification or adoption of the act. Williamson v. Tyson, 105 Ala. 644, 17 So. 336. But here again ratification need not be specially averred. Southern Railway Co. v. Beaty, 212 Ala. 608, 612, 103 So. 658; 3 C.J.S., Agency, § 312, p. 246.

■ In the case of Stewart v. Capital Fertilizer Co., 207 Ala. 596, 93 So. 641, the pleading showed that the note was procured by a fraudulent statement as to a provision in the note. There was no allegation as to the authority of the agent. The pleading was held good evidently on the theory that the principal by suit on the note ratified the method of its procurement. However, in the plea in the present case, it seems to us that its allegations are clearly an effort to show that the agent had original authority to bind his principal. As pointed out above, the allegation is not sufficient in such an instance where it is merely alleged that the agent was acting in furtherance of the business of the principal. In this discussion we have not considered that the alleged principal is a governmental agency. See Escambia County v. Dixie Chemical Products Co., 229 Ala. 287, 156 So. 631.

■ Plea 10, which will appear in the report of the case, sets up a contract in which performance of the contract is subject to approval of a third party, the War Board of Bullock County. In the case of Alabama Chemical Co. v. International Agricultural Corp., 215 Ala. 381, 110 So. 614, 615, in speaking of contractual provisions similar in principle, this court said:

"Such provisions are within the power of the parties to contract. Where the contract expressly declares, or clearly imports an intention, that the decision of the chosen agency shall be final, it is final as other terms of the contract and subject to be avoided on similar grounds; not technically in arbitration to settle dispute already arisen, but to forestall disputes, and to have the aid of expert knowledge in the conduct of a business requiring it. Mere mistake or error in the decision of the umpire does not avoid it; if so, the purpose of the stipulation would fail, the right of contract denied, and the chosen means of avoiding controversy made the breeder of litigation. The importance of such provisions in the conduct of many lines of present day business demands that they be annulled only upon substantial and well-established legal grounds.

"Like other transactions, the decision of the referee may be assailed for fraud. A report known by him to be false, working substantial injury to a party relying thereon, is a fraud. In assuming the duties of referee an element of trust is present. Hence, such flagrant disregard of duty as results in a decision not expressive of an honest judgment is a decision in bad faith, tantamount to a fraud. A gross error or mistake, working injury to a party, is evidential matter from which bad faith may be inferred or implied. The gravamen of the charge is bad faith, failure to form or express an honest judgment, with consequent injury. * * *."

See also Phillips v. Sipsey Coal Mining Co., 218 Ala. 296, 118 So. 513; Abercrombie v. Vandiver, 126 Ala. 513, 532, 28 So. 491, 496; Catanzano v. Jackson, 198 Ala. 302, 73 So. 510; 12 Am.Jur. p. 898, § 342.

■ In the case of Shriner v. Craft, 166 Ala. 146, 51 So. 884, 888, 28 L.R.A., N.S., 450, 139 Am.St.Rep. 19, this court said:

"Where a building contract specially provides that the certificate of the architect shall be final and conclusive, it is conclusive and binding in its legal operation and effect on the parties to the contract, and can be impeached only for fraud, or such

gross mistakes as would imply bad faith or a failure to exercise an honest judgment. * * *."

In keeping with the foregoing authorities the allegation that the War Board was mistaken in their finding is insufficient since there is no averment of any mistake equivalent to fraud or bad faith. Plea 10 in this aspect was bad. There is no attack on the allegation in plea 10 that "such certificate has not been granted to him due to the fact that the Board has failed or refused to act, * * *."

In view of what has been said, there appears to be no need to discuss other assignments of error.

Reversed and remanded.

BROWN, FOSTER, and LAWSON, JJ., concur.